# F. B. CASTLE v. CITY OF STILLWATER AND ANOTHER.[1]

January 25, 1952.

No. 35,611.

[1]Reported in 51 N. W. (2d) 370.

*John M. Prins,* for relators.

*Hansen, Hazen & Lynch,* for respondent.

CHRISTIANSON, JUSTICE.

Certiorari to review an order of the industrial commission affirming the findings of a referee awarding F. B. Castle workmen's compensation. The referee found that the employe was totally and permanently disabled, and that he might require further medical treatment. We are asked to determine whether the evidence sustains these findings.

Employe was chief of police of the city of Stillwater on May 3, 1944, when he was injured in an auto accident arising out of and in the course of his employment. Following the accident, relators voluntarily paid employe compensation for 170 weeks—50 weeks of temporary total disability and 120 weeks of permanent partial disability. Relators discontinued payments on August 7, 1947, but on December 2, 1947, after hearings were held, a referee of the industrial commission found that employe was still temporarily totally disabled as of November 28, 1947, and awarded payments as his disability might warrant for a period not to exceed 300 weeks from the date of the accident. Relators made payment under that award until January 30, 1950, on which date the 300 weeks expired. Thereafter, employe filed a claim petition alleging that he was totally and permanently disabled.

The testimony at the hearing on this petition tended to show that employe had suffered an injury to the cervical region of his spine as a result of the accident. The injury manifests itself in several ways. Employe is able to close his right hand only 75 percent of normal. Thus, he can draw his fingers to within about an inch of the palm of his hand, but cannot draw them into his palm to form a fist. He lacks normal coördination in both his arms, and both his hands have suffered a decrease in strength. Dr. Vernon Smith, who testified for employe, estimated that employe's right hand had

only half its normal strength; and Dr. Gordon R. Kamman, who testified for relators, estimated that employe had suffered a 70 percent loss of gripping power in that hand. Both Dr. William H. Hengstler, who appeared for employe, and Dr. C. C. Chatterton, who appeared for relators, agreed that there had been a loss of strength in the right hand. Dr. Smith also estimated that employe's left hand had decreased 10 percent in strength. Employe testified that as a result of the impairment to his hands he cannot carry anything in his right hand and can hold a pencil in that hand only long enough to write his name three or four times. In Dr. Kamman's opinion, the finer movements in employe's hands have been so impaired as to prevent his writing legibly with either hand.

The injury to employe's spinal cord has also affected his legs. He has very poor coördination in both legs and drags his right leg when walking. This results in unsteadiness on his feet and a "stiff, peg-legged" type of walk. There is also a marked decrease in the vibratory sense in his legs. Employe testified that his left leg has "buckled" under him a number of times. Dr. Smith found a 20 percent loss of strength in the right leg and a 10 percent loss of strength in the left leg. Dr. Kamman found normal muscle strength in both legs. However, both Dr. Kamman and Dr. Smith agreed that as a result of the effect of the spinal injury upon employe's legs he cannot do work requiring the use of his legs.

The testimony also discloses that employe has been subject to severe backaches continuously. Dr. Smith testified that, in view of the absence of such pains prior to the injury, the pains might well be the result of the injury, though he did state that it was "humanly" possible for such pains to come from arthritis. Dr. Smith also testified that the motion in employe's spine was less than that normally found in a man of employe's age. All the witnesses agree that employe still possesses a clear mind.

Each of the medical witnesses was asked his opinion concerning the extent of employe's disability. Dr. Hengstler stated that employe was permanently and totally disabled "insofar as earning a living" was concerned. Dr. Smith's opinion was that in the future

employe could do no physical work, but could do mental work where he "wouldn't have to use his hands or his feet." Dr. Chatterton testified that any opinion would have to be based on the entire body rather than individual parts, and that on that basis employe had suffered a 25 percent permanent loss of "bodily function." In Dr. Kamman's opinion, employe had suffered a 30 percent permanent loss of "bodily function."

Although it was the opinion of all the doctors that no future treatments could alter employe's basic disability, Dr. Smith testified that physiotherapy, massage, and heat treatments would add to employe's comfort by relieving some of the stiffness in his hands and back which resulted from the injury.

Employe was 69 years old at the time of the hearing in 1950. He had an eighth grade education. Though employe had worked as a laborer when a young man, his major working experience was in other fields. He spent about 22 years in the insurance and real estate business and about 15 years as chief of police of Stillwater, the position he held at the time of the accident. As chief of police, his work consisted of walking a beat like regular patrolmen and doing a small amount of administrative work. He testified that since the accident he has done a little work in his garden as well as in the garden of a neighbor. Employe finds that working even for short periods is quite fatiguing to him. He can work a few hours on occasion, but must thereafter rest for three or four days because of the strain it places upon him.

In determining whether the facts and the reasonable inferences to be drawn therefrom sustain the commission's findings that employe is permanently and totally disabled and that he "may require further medical supervision or treatment," the evidence must be viewed in the light most favorable to such findings. The findings of the commission on questions of fact will not be disturbed unless a consideration of the evidence and the permissible inferences therefrom require reasonable minds to adopt contrary conclusions. Caputa v. Land O' Lakes Creameries, Inc. 234 Minn.

514, 48 N. W. (2d) 895; Jurich v. Cleveland-Cliffs Iron Co. 233 Minn. 108, 46 N. W. (2d) 237; 6 Dunnell, Dig. & Supp. § 10426.

■ M. S. A. 176.11, subd. 5, provides that—

"any * * * injury which totally incapacitates the employee from working at an occupation which brings him an income constitutes total disability."

Since workmen's compensation is a type of social insurance,[2] total disability is defined by our statute in terms of employability and ability to earn an income rather than in terms of loss of bodily function, except for the specific losses referred to in § 176.11, subd. 5. Consequently, we have frequently held that though an employe has not suffered a 100 percent loss of bodily function he may nevertheless have suffered a total permanent disability within the terms of our compensation statute. Berg v. Sadler, 235 Minn. 214, 50 N. W. (2d) 266; Green v. Schmahl, 202 Minn. 254, 278 N. W. 157; see, Lee v. Minneapolis St. Ry. Co. 230 Minn. 315, 319, 41 N. W. (2d) 433, 436. His ability to work need only be so limited in quality, quantity, or dependability that employers will not be prone to hire him. Berg v. Sadler and Lee v. Minneapolis St. Ry. Co. *supra*. Thus, in defining total disability, losses in bodily function are not important in themselves, but are only important insofar as they relate to ability to earn an income.

There is considerable testimony that one result of employe's spinal injury has been to make it impossible for him to use his legs in the performance of any occupation. Furthermore, it was generally agreed by the medical experts that employe's hands, particularly his right hand, are incapable of the normal finer movements and have suffered a loss of strength because of the injury. On this point, Dr. Kamman testified that employe would not be able to write legibly with either hand. The foregoing testimony precludes us from disturbing the commission's findings. However, relators urge upon us the fact that, despite the testimony that

[2]Riesenfeld, *Forty Years of American Workmen's Compensation*, 35 Minn. L. Rev. 525, 529.

employe would not be able to use either his hands or feet in the performance of any occupation for which he has either the capacity or training and despite evidence that he tires easily, some of the medical experts were of the opinion that employe would be capable of some type of administrative work. These statements were based on the fact that he was still mentally clear and had gained administrative experience in the insurance business and as police chief. But, while employe's training has fitted him for the administrative work that these particular occupations entail, there is nothing to indicate that he could do such work without the use of his legs or his hands. Even if he could do this type of administrative work, there is nothing in the record to indicate that he would be considered for employment, in view of the fact that administrative work is only a part of these occupations. Furthermore, there is nothing to indicate that employe is qualified for administrative work in other fields, or that, if he is, any such work will not require him to use either his hands or his feet. Thus, the opinions expressed by these witnesses were not conclusive on the question of employe's total disability under § 176.11, subd. 5. Cf. Berg v. Sadler, 235 Minn. 214, 50 N. W. (2d) 266; Green v. Schmahl, 202 Minn. 254, 278 N. W. 157.

The small amount of gardening employe was able to do in his yard and for his neighbors does not of itself establish his ability to earn an income, for in the past we have held that an employe who has even done some remunerative work may nevertheless be totally disabled. Berg v. Sadler and Green v. Schmahl, *supra.*

In addition to employe's inability to use his hands and legs in any occupation for which he has been trained, we find further evidence to sustain the commission's findings in the opinion of Dr. Hengstler that employe was permanently and "totally disabled insofar as earning a living is concerned." Thus, Dr. Hengstler's opinion, combined with the other testimony concerning employe's disability, provides evidence sufficient to sustain the commission's findings.

Relators assert that there is no evidence to support the finding that "employe may require further medical supervision or

treatment" and that the order of the commission directing them to afford "employe such further medical supervision or treatment as may be reasonably necessary to cure or relieve from the effects of said accident" was wholly unauthorized. These assertions are predicated upon the general agreement among the medical experts that further medical treatment would not effect a greater cure than had already been accomplished.

Section 176.15 requires the employer to furnish such medical treatment as may be reasonably necessary to "cure and relieve" from the effects of a compensable injury. This section has been construed to mean that the employer must furnish the care necessary to "cure *or* relieve" the injured employe. Eberle v. Miller, 170 Minn. 207, 212 N. W. 190. Thus, though further medical treatment cannot effect a greater cure, it nevertheless may be ordered to relieve from the effects of the injury. In this connection, Dr. Smith testified that physiotherapy, massage, and heat treatments would relieve the stiffness in the hands and back which employe testified caused him considerable discomfort. Thus, it affirmatively appears that further treatment may relieve employe of some of the effects of his spinal injury, though a cure cannot be effected.

Since the commission by its order granted employe only such medical treatment as he is entitled to receive under the compensation act and relators are ordered to furnish only such further medical attention as they are required to furnish under the act, no grounds for reversal are presented.

Writ discharged and order affirmed.

Employe is allowed $250 attorneys' fees over and above his costs and disbursements.