PAUL J. LUTHENS v. GLENCOE RED & WHITE STORE AND ANOTHER.
VAL BJORNSON, STATE TREASURER,
CUSTODIAN OF SPECIAL COMPENSATION FUND.

117 N. W. (2d) 386.

October 11, 1962—No. 38,575.

*McLeod & Gilmore,* for relators.

*Walter F. Mondale,* Attorney General, and *O. T. Bundlie, Jr.,* Special Assistant Attorney General, for state treasurer.

ROGOSHESKE, JUSTICE.

Certiorari to review a decision of the Industrial Commission assessing an award of permanent total disability compensation to an employee solely against relators, Glencoe Red & White Store and its in-

surer, and determining that no part of the award could be apportioned against the Special Compensation Fund pursuant to Minn. St. 1953, § 176.13, often referred to as the subsequent or successive injury statute.[1]

The employee, Paul Luthens of Hutchinson, Minnesota, quit his job in a Hutchinson locker plant in the spring of 1952 and became the employee of Glencoe Red & White Store, employer herein, in July 1952. On January 28, 1953, as he was carrying a box of canned meat he experienced a sudden catch in his back, resulting in severe pain and requiring hospitalization for 8 days. On February 16 he returned to work but his back continued to trouble him. Shortly before starting his vacation on June 15, 1953, he was again disabled. After his vacation he returned to work for 9 days but he has been unable to work at any gainful employment since July 8, 1953. His condition was diagnosed as a protruded intervertebral disc between vertebrae of the lumbar spine.

Upon his first hospitalization following injury on January 28, the employer and insurer paid hospital and medical expenses and compensation through February 14, 1953. Thereafter the employee filed a claim petition and after hearings before a referee in 1954 and in 1956, he was awarded further hospital and medical expenses and compensation for temporary total disability for a total period of 310 weeks. These payments were completed on May 30, 1959. On January 4, 1960, the employee filed a claim petition for permanent total disability resulting either from a combination of the injury (herniated

---

[1]Minn. St. 1953, § 176.13, provides in part:

"If an employee receives an injury which of itself would cause only permanent partial disability, but which, combined with a previous disability, does in fact cause permanent total disability, the employer shall only be liable for the permanent partial disability caused by the subsequent injury.

"(a)  In addition to compensation for such permanent partial disability and after the cessation of the payments for the prescribed period of weeks, the employee shall be paid by the state the remainder of the compensation that would be due for permanent total disability, as provided for by section 176.101, subdivision 3(1-42 inclusive), out of a special fund known as the special compensation fund."

disc) of January 28, 1953, and a preexisting arthritis of the spine or solely from the injury of January 28. Under the first alternative the Special Compensation Fund would be exposed to liability pursuant to § 176.13, and the state treasurer as custodian of special fund was joined as a party. As custodian he denied liability and a final referee's hearing was held in November 1960.

At the time of his injury the employee was 63 years of age. Prior to his last employment he had earned his living throughout his working years as a meat cutter and in related work. Most of the time he was employed by others but for a period of time he was self-employed in the same type of business.

From the entire record the medical testimony was in agreement that prior to the injury to his back the employee was suffering from a degenerative condition of hypertrophic arthritis in the lumbo-sacral spine. The custodian argued that such preexisting arthritis was not a "previous disability" within the meaning of § 176.13, and thus an element essential to fix liability against the special fund was lacking. Supporting this argument, it was contended that the employee had failed in his burden of proof to establish that such condition materially affected his earning capacity and that the evidence rather required a finding that any previous disability of the employee was due to the frailties brought on by age and years of back-straining toil. On this issue the referee's findings following each of the three hearings[2] were contrary to the contention of the custodian. The commission agreed with the referee, detailing its findings and conclusions in these words:

"* * * The employe was hired at a dollar an hour. This was a smaller rate than what the employe had frequently earned. The reason he was not hired at a higher rate, according to the employer, was that he did not think the employe could do heavy lifting, and 'because that's all I figured that Paul [the employe] was worth to us, and that's what we could afford to pay him.' At the time of hiring, the employer did not know the employe had had previous trouble with his

---

[2]The testimony on this issue was received at the first hearing, at which the custodian of the special fund was not represented. He agreed to rely solely on the previous record.

back. However, the employe testified that the reason he desired this lighter work was because his back would not take heavy work. There was arthritis in the employe's back, and he was also a bit frail."

And further the commission stated:

"* * * we believe that the arthritis did cause a reduction in wages. The X-rays showed extensive arthritis and although the employe got along very well until his 1953 accident, the evidence is also clear that in 1952, he took the job with his present employer at $1.00 an hour, which was a lesser rate than he had received, because of his back. This arthritis was bothering him to the extent that he at least wanted light work. Thus * * * the employe's disability [arthritis] had interfered materially with his earning capacity and was of the type referred to by M. S. 176.13."

The employer and insurer do not, of course, challenge this finding. Rather the sole question presented by their appeal is whether the evidence received at all three hearings sustains the finding that the "employe is permanently and totally disabled as the sole result of the injury of January 28, 1953."

On this issue the referee found permanent total disability as a result of the accidental injury combined with the preexisting arthritis. The commission reversed this finding.

The question presented requires primarily a critical analysis of the entire medical testimony under rules limiting the scope of appellate review of commission findings.

Three doctors testified, the attending doctor and an orthopedic specialist to whom the attending doctor referred the employee, both on behalf of the employee, and an orthopedic specialist on behalf of the employer and insurer. In testimony given at the first hearing in 1954, the specialists agreed that the employee, prior to his injury, had a 20- to 25-percent disability or loss of function of his back because of the arthritis. Their opinions were in direct conflict as to whether he sustained a herniated intervertebral disc. The employee's specialist expressed the probability that he did and the specialist called by the employer and insurer conceded the probability but expressed his opinion that he found no clinical evidence to support a disc in-

jury and that "active arthritis" was the cause of the employee's disablement. In contrast, the employee's attending physician, who had examined and treated him repeatedly since June 22, 1953, was quite positive that the employee suffered a disc injury to his spine. At this hearing the efforts to isolate the cause of the employee's temporary total disability were merely suggestive and unproductive because it was too early to determine the final result.

At the 1956 hearing the question of the employee submitting to surgery was of primary concern. Only the employee's orthopedic specialist was called. At this time, after expressing his opinion on cross-examination that the employee had become totally and permanently disabled in January 1955, he was asked:

"Q. Is it still your opinion, Doctor, that the disability that he suffered as a result of this injury, coupled with the twenty per cent disability which existed previous to this injury, has rendered him total permanent?

"A. Yes, providing he does not have surgical treatment.

\*   \*   \*   \*   \*

"Q. And that now, if he is total permanent, that is in his present status without surgery, then his present total disability is attributable to the twenty per cent plus the increase that has taken place from that time up to the present?

"A. That is correct."

At the 1954 hearing he testified that the employee's symptoms were typical with the diagnosis of an "intervertebral disc disease."

At the final hearing in November 1960, on his claim petition for permanent total disability, the employee called the only medical witness, his attending physician. Without detailing the evidence to the extent the commission did in its findings, we note that this witness testified:

"\* \* \* the fact that he had arthritis producing disability was coincidental, I mean, it just happened he has both of these things but he has enough trouble due to the disc so you could ignore the arthritis." He further testified:

"* * * That is the point I want to make that the complaints he had developed in the winter of 1953, were something that were quite separate and distinct from those that he may have had before."

No rebuttal to these opinions was offered. We must, of course, view the evidence in the light most favorable to the commission's decision.

The rules governing a review of the Industrial Commission's decision are settled. As stated in Richter v. Shoppe Plumbing & Heating Co. 257 Minn. 108, 112, 100 N. W. (2d) 96, 98:

"We must review the sufficiency of the evidence to sustain findings of the commission in the light of the well-established rule that the findings will not be disturbed unless manifestly contrary to the evidence or unless a consideration of all of the evidence and the inferences permissible therefrom would require reasonable minds to adopt a contrary conclusion.

"A conflict in the opinion of medical experts, the same as a conflict in the testimony of other witnesses, must be resolved by the commission as the trier of facts."[3]

It is not our function to determine whether the weight given or the inferences drawn from the testimony received by the commission are correct, or preferable, or the same conclusions which we would adopt if we were the triers of fact. Where, as here, there is a reasonable basis to support the commission's finding, we are compelled to sustain the decision.

Our decision on the question presented to this court by the employer and insurer absolves the custodian of the special fund of any liability. No proper purpose will be served by determining whether or not the commission's decision is also to be upheld because the evidence was insufficient to support a finding that the employee's preexisting arthritic condition did in fact constitute a "previous disability" under § 176.13.

Affirmed.

---

[3] Weber v. Printing, Inc. 263 Minn. 403, 116 N. W. (2d) 569; Lee v. Minneapolis St. Ry. Co. 230 Minn. 315, 41 N. W. (2d) 433; Powers v. Eddy's Baking Co. 261 Minn. 363, 112 N. W. (2d) 625; Peterson v. The Ruberoid Co. 261 Minn. 497, 113 N. W. (2d) 85.