James J. **HAMMER**, Respondent,

v.

**MARK HAGEN PLUMBING & HEATING and Iowa Mutual Insurance Company, Respondents,**

and

**New Mech Companies and State Fund Mutual Insurance Company, Relators,**

and

**State Treasurer, Custodian of the Special Compensation Fund, Respondent.**

No. C6–88–909.

Supreme Court of Minnesota.

Jan. 31, 1989.

Stephen F. Mattaini, Minneapolis, for relators.

Lorrie Becsheinen, Minneapolis, for James Hammer.

Victor Johnson, Minneapolis, for Mark Hagen Plumbing & Heating and Iowa Mut. Ins. Co.

Winston Ehlmann, Asst. Atty. Gen., St. Paul, for respondent.

David Stofferahn, Minneapolis, for amicus curiae.

YETKA, Justice.

This case comes before us on an appeal brought by New Mech Companies seeking reversal of a Workers' Compensation Court of Appeals' decision. The WCCA reversed a compensation judge's finding which discontinued workers' compensation benefits being paid to an employee on the grounds that he had reached maximum medical improvement (MMI). We affirm the Workers' Compensation Court of Appeals on the MMI issue, but reverse its order that the matter be remanded.

*Factual History*

James J. Hammer (employee) is 41 years old and suffered his first work-related injury on May 17, 1976, while employed as a plumber for Hagen Plumbing & Heating. Hagen was insured by Iowa Mutual Insurance Company at that time. On that day, the employee injured his lower back while installing a bathtub and underwent two lumbar spinal fusions in November 1976 and January 1978. The employee eventually received compensation for a 42.5% permanent partial disability of the spine and was registered with the Special Compensation Fund for 35% disability.

The employee began working for New Mech Companies in August 1981 as a journeyman plumber and later as a foreman. On January 2, 1986, he again injured his back while lifting a bathtub. New Mech was insured by Minnesota State Workers' Compensation Mutual Insurance Company at the time of the injury. The employee

reported to the emergency room at the University of Minnesota Hospitals and began treatment with Dr. Maxwell, who prescribed therapy and injections.

Dr. Maxwell referred the employee to the Institute for Low Back Care where he came under the care of Drs. Thomas Hennessey and Richard Salib. The employee received three steroid injections and, in September 1986, additional injections of phenol. These injections provided only temporary relief and, as of September 1986, the employee was still totally disabled and further treatment in the form of radiofrequency blocks and possible surgery was contemplated.

On September 8, 1986, in a letter to New Mech's insurer, Dr. Hennessey stated that Mr. Hammer's current problems were the result of his first back injury. New Mech then arranged for the employee to be seen by Dr. Thomas Litman. After a brief, single examination of the employee on January 8, 1987, Dr. Litman opined that maximum medical improvement from the 1986 injury had been reached and noted that he would not advise further surgery. He regarded the 1986 injury as a permanent aggravation and apportioned responsibility for the employee's ongoing disability at 95% to the 1976 injury and 5% to the 1986 injury. He also concluded that Mr. Hammer's disability after the 1986 injury was substantially greater because of his pre-existing physical impairment.

On February 6, 1987, New Mech served the employee with Dr. Litman's MMI report and a Notice of Intention to Discontinue (NOID) effective 90 days from that date. At this time, New Mech also filed a Petition for Contribution or Reimbursement against Hagen Plumbing & Heating and the Special Compensation Fund.

The employee exercised his right under Minn.Stat. § 176.242 (1986) (repealed 1987) and requested an administrative hearing on the NOID. On March 11, 1987, the rehabilitation specialist approved the discontinuance of benefits.

The employee filed an Objection to Discontinuance on March 24, 1987. Three days later, New Mech filed a motion to consolidate the employee's Objection to Discontinuance with its Petition for Contribution or Reimbursement. New Mech's alleged rationale in moving for consolidation was to avoid inconsistent findings which might allow them to discontinue benefits while the employee remained disabled as a result of the first injury. Hagen objected to the motion for consolidation because it would not have enough time to prepare a defense, and the employee refused to waive his right to an accelerated hearing. The motion to consolidate was, therefore, denied.

On May 8, 1987, Dr. Salib discovered a previous, inadvertent fusion of the employee's SI joint. Dr. Salib regarded this as a possible cause of employee's increased pain in that area and concluded that if disabling pain continued and the employee was at the "end of his rope," surgery "might be worth considering" even though he would not normally recommend it.

On July 10, 1987, a compensation judge heard the employee's objection to discontinuance. Relying on Dr. Litman's report as "the only definitive medical opinion regarding the issue of maximum medical improvement," the compensation judge held that the employee had reached MMI on the January 1986 injury. She noted that, even though the employee was still undergoing treatment and further treatment was contemplated, there was no evidence relating that treatment to the 1986 injury. The compensation judge's memorandum also reflects her view that continued treatment would not significantly improve Mr. Hammer's condition.

The Workers' Compensation Court of Appeals filed its decision on March 31, 1988. The WCCA vacated the finding that the employee had reached MMI and remanded the case for a determination of whether the employee's disability after the 1986 injury was substantially greater because of his pre-existing disability. On appeal to this court, there are four issues before us:

    I. Whether maximum medical improvement is strictly a medical issue;

II. Whether, in the case of successive injuries, benefits may be terminated under subdivision 3e of Minn. Stat. § 176.101 before maximum medical improvement occurs on all injuries in combination;

III. Whether benefits may be terminated under subdivision 3e of Minn. Stat. § 176.101 when an employee has reached maximum medical improvement, but has not been medically authorized to return to the work force; and

IV. Whether the WCCA correctly remanded for a determination of whether the employee's disability after the 1986 injury was substantially greater due to his pre-existing disability.

*Background*

The 1983 amendments to the workers' compensation law (new law), to a large degree, center around the concept of "maximum medical improvement." Minn.Stat. § 176.101, subd. 3e(a) (1986) provides:

Ninety days after an employee has reached maximum medical improvement and the medical report described in clause (c) has been served on the employee, or 90 days after the end of an approved retraining program, whichever is later, the employee's temporary total compensation shall cease. This cessation shall occur at an earlier date if otherwise provided by this chapter.

Assuming that an employee is not involved in a retraining program, temporary total disability benefits will cease 90 days after service of the MMI report. In that time, the statutory scheme envisions that the employee will or will not receive a suitable job offer. If the employee does receive a suitable job offer, he is entitled to "impairment compensation." *See* Minn. Stat. § 176.101, subd. 3e(b) (1986). If no suitable job offer is made, the employee receives "economic recovery compensation." *See* Minn.Stat. § 176.101, subd. 3p (1986). Both tiers of this benefit system are based on a rating of permanent partial disability.

The critical issue in this case involves the effect of the 1983 amendments when an employee sustains compensable injuries prior to 1983 and also under the new law. The position New Mech urges this court to adopt would leave a gap in the employee's benefits and result in piecemeal litigation.

If, as New Mech argues, Mr. Hammer has reached MMI as to the January 1986 injury, it would be allowed to discontinue temporary total benefits even though the employee is unable to return to work due to the effects of his 1976 injury. The disabled employee is left without any compensation until he is able to litigate a claim against the 1976 employer, thus creating an inappropriate gap in his benefits. We do not believe that the legislature intended this result.

*MMI As a Medical Issue*

Maximum medical improvement is statutorily defined as meaning "the date after which no further significant recovery from or significant lasting improvement to a personal injury can reasonably be anticipated, based upon reasonable medical probability." Minn.Stat. § 176.011, subd. 25 (1986).

New Mech repeatedly asserts that MMI is, by definition, purely a medical issue. It urges that the decision of the compensation judge be reinstated because it was in accordance with the only expert medical opinion as to whether the employee had reached MMI.

Dr. Litman's opinion was that the employee had reached MMI from the January 2, 1986 injury. If "based upon reasonable medical probability" means a compensation judge can only base her decision on an expert medical opinion, Mr. Hammer must be considered to have reached MMI. Such an interpretation, however, would prevent the judge from evaluating the reasonableness of the opinion and the credibility of the doctor.

A finding of MMI is one of ultimate fact. It determines the rights and liabilities of the parties. A determination of MMI results in the end of an employee's right to temporary total compensation and requires that the degree of permanent disability be

ascertained. MMI is a controlling legal standard and, therefore, it is the responsibility of the compensation judge to evaluate the employee's condition as documented by medical records, medical opinions and other data and circumstances. "Medical probability" does not mean only the opinion of a physician. Indeed, the Minnesota Department of Labor and Industry has prepared a list of MMI factors to be considered by rehabilitation specialists at administrative conferences. Factors include the history of improvement, current treatment, pre-existing conditions, and proposed treatment. Information suggested for review includes opinions from health care providers, independent examinations, other medical or vocational reports and statements of the various parties at the conference. *See* Minnesota Dep't of Labor & Industry, *Health Care Provider's Guide to the Minnesota Workers' Compensation System* 11–12 (rev. ed. 1987).

MMI is not determined solely by a physician's opinion. We believe that a finding of MMI, like a determination of the degree of permanency, rests with the compensation judge, not the medical profession. *See Hosking v. Metropolitan House Movers Corp.*, 272 Minn. 390, 398, 138 N.W.2d 404, 409 (1965). In this case, the compensation judge had a duty to consider not only Dr. Litman's report, but also the credibility of that witness and his report in light of all the other evidence presented. Here, because Mr. Hammer was undergoing treatment at the time of the hearing and subsequently underwent further surgery, the WCCA was clearly justified in reversing the compensation judge's MMI finding.

*Reaching MMI on Successive Injuries*

■ Employee argues that MMI must be reached on *all* compensable injuries that contribute to his current disability before temporary total disability benefits can be discontinued. Dr. Litman's MMI report in the instant case expressed his opinion that the employee had reached MMI from the January 2, 1986 injury; yet, the employee remains unable to work as a result of either the 1976 or 1986 injury or a combination of both. Notably, the record is insuffi-

cient at this time to apportion cause between the injuries because the first employer and insurer have not been involved in this litigation.

Accepting New Mech's position that Mr. Hammer has reached MMI from the 1986 injury instead of requiring the employee's whole person to be at MMI would again create an unwarranted gap in the employee's benefits. In *Joyce v. Lewis Bolt & Nut Co.*, 412 N.W.2d 304 (Minn.1987), we dealt with the difficulty attending the application of the "new" and "old" law in instances where an employee suffers a new and separate injury rather than a consequential injury, *i.e.*, one which is simply a continuance or aggravation of an earlier injury. In that analogous situation, we concluded that it was far more practical that an employee only be required to prove that the latest injury is compensable. *Id.* at 307–08. The burden is on the employer, not the employee, to seek an allocation of liability among other, previous employers. This protects the employee from the onerous task of proving a series of injuries and attempting to apply the applicable law to each separate injury.

■ In keeping with the principle of *Joyce*, the employee here is entitled to benefits regardless of a dispute among employers/insurers as to liability. Therefore, as a general rule, MMI must be reached on all compensable injuries to guard against a discontinuance of temporary total benefits when an employee remains disabled from work-related injuries and more appropriately places the burden of allocating liability on the employer. *See* Minn.Stat. § 176.101, subd. 4a (1986).

■ Accordingly, we agree with the WCCA that MMI was not established by the employer in this case and, on that issue, the WCCA is affirmed.

*MMI and a Return-to-Work Requirement*

It is likely that, when adding the concept of MMI to the workers' compensation scheme, the legislature was assuming that an injured employee who reached MMI would be able to return to work. Minn.

Stat. § 176.101, subd. 3e is entitled "End of temporary total compensation; suitable job." The subdivision, as a whole, contemplates return to work situations. It outlines the effect of a job offer, no job offer, refusal of a job offer and even provides what is to happen if the employee begins a job and then leaves. Despite the apparent statutory interrelationship between ability to return to work and MMI, the statute literally allows for MMI to be reached in a case where the employee cannot work; subdivision 3e(a) stops temporary total disability benefits 90 days after the employee reaches MMI and a report has been served.

Judicially adding a return-to-work requirement to section 176.101, subdivision 3e(a) would ignore the fact that, in some cases, MMI may be reached (*i.e.*, no further significant recovery or lasting improvement can reasonably be anticipated), but the employee still cannot work. Generally, when MMI is attained, permanent disability benefits in the form of impairment compensation or economic recovery compensation would begin. However, by adding a return-to-work requirement, temporary total compensation would never end.

By announcing a rule which would forbid an MMI finding where the employee cannot yet return to work, this court would be doing more than interpreting MMI; it would be adding another requirement not embodied in the clear language of the statute, which would be necessary before temporary total compensation may cease. This question we will leave for the legislature to resolve.

*WCCA Rationale*

■ Despite our conclusion that the WCCA correctly reversed the compensation judge's finding of MMI, the rationale of the WCCA's decision needs to be addressed.

The WCCA remanded the case to determine whether the employee's disability was substantially greater due to his pre-existing disability. The basis of the remand was that the "substantially greater" issue is relevant to MMI. The statute that the WCCA relied on provides:

> If an employee incurs personal injury and suffers disability that is substantial-

ly greater, because of a preexisting physical impairment, than what would have resulted from the personal injury alone, the employer shall pay all compensation provided by this chapter, but the employer shall be reimbursed from the special compensation fund * * *.

Minn.Stat. § 176.131, subd. 1 (1986). As argued by the relator and the Special Compensation Fund, this provision does not entitle the worker to any additional benefits; it is a reimbursement provision. It allows an employer who hires an employee with a disability to seek reimbursement from the Special Compensation Fund if certain statutory requirements are met.

Whether the employee's disability is substantially greater because of a pre-existing condition will be addressed when New Mech's Petition for Contribution or Reimbursement is heard. The decision of the WCCA erroneously makes a MMI finding dependent on a determination of Special Fund liability. Although an apportionment of liability between the employers/insurers and the Special Fund will eventually occur, that issue is separate from the current discontinuance question and the WCCA remand was, therefore, inappropriate.

Accordingly, the Workers' Compensation Court of Appeals' decision is affirmed in part and reversed in part.