Timothy GIBBONS, Relator,

v.

WEYERHAEUSER, Self–
Insured, Respondent,

and

Dr. Schumacher, Medical Provider.

No. C7–91–2260.

Supreme Court of Minnesota.

April 3, 1992.

**481**

David G. Moeller, David G. Moeller & Associates, Minneapolis, for relator.

Kathy A. Endres, Gilmore, Aafedt, Forde, Anderson & Gray, P.A., Minneapolis, for respondent.

COYNE, Justice.

This workers' compensation matter involves the nature of benefits available when there is a layoff for economic reasons following attainment of maximum medical improvement and return to work at a job meeting the requirements of subdivision 3e of section 176.101.

Timothy Gibbons worked for Weyerhaeuser as an assistant marketing manager. On November 14, 1988, while traveling in New Jersey on business, he was injured in a work-related motor vehicle accident. Despite his injuries the employee continued working for the employer in his regular marketing job, occasionally missing time from work for medical care. On November 6, 1989 he was served with notice of maximum medical improvement. On December 31, 1989 he was laid off for economic rea-

sons; and his unemployment continued until December 4, 1990, when he began working as a sales person for Best Buy Company.

. The compensation judge concluded the employee was entitled to economic recovery compensation for his 19.8975% permanent impairment of the body as a whole because the economic layoff from a subdivision 3e job [1] occurred prior to expiration of the 90–day period following maximum medical improvement. Although the employee had claimed monitoring period compensation [2] for the total number of weeks he was laid off, the compensation judge awarded monitoring period compensation for only a two-month period during which the employee conducted a diligent work search. On the employer's appeal, the Workers' Compensation Court of Appeals modified the award of compensation for the employee's permanent partial disability, concluding the employee was entitled to impairment compensation instead of economic recovery compensation. The WCCA also noted that because monitoring period compensation compensates the worker for a functional impairment, the worker is not required to establish that a period of unemployment was causally related to the disability. Nevertheless, the WCCA did not disturb the monitoring period compensation award because the employee had not appealed from the compensation judge's determination on that issue.

■ Like the WCCA we conclude that impairment compensation, not economic recovery compensation, is payable when an economic layoff occurs, as it did here, during the 90 days following service of notice of maximum medical improvement. The definition of "monitoring period," Minn. Stat. § 176.011, subd. 26 (1990), and the provision for the payment of monitoring period compensation, Minn.Stat. § 176.101, subd. 3i (1990), make it quite clear that economic recovery compensation is not payable together with monitoring period compensation.

1. Minn.Stat. § 176.101, subd. 3e(b) (1988).

2. Minn.Stat. § 176.101, subd. 3i(a) (1988).

The number of weeks on which economic recovery compensation is calculated for the percentage of permanent bodily impairment suffered by the employee sets the time frame for the monitoring period. Monitoring period compensation is payable from the commencement of the economic layoff until the expiration of the monitoring period or until the sum of monitoring period compensation and impairment compensation paid or payable equals the amount of economic recovery compensation that would have been paid if that compensation were payable, whichever first occurs. *Id.* Monitoring period compensation, then, is designed to narrow the gap between impairment compensation and economic recovery compensation when an employer cannot, because of economic conditions, continue to make a suitable job available to the injured employee. As we have previously commented,

> Apparently the possible imposition of monitoring period benefits is thought to provide an incentive for employers to rehire employees to good jobs and keep them there. (Citation omitted). It also may discourage employers from rehiring employees for a short time to terminate temporary total disability benefits and then letting them go.

*Cassem v. Crenlo, Inc.,* 470 N.W.2d 102, 105–06 (Minn.1991).

██ As originally enacted, the offer of a suitable job pursuant to subdivision 3e of section 176.101 and, consequently, the commencement date of the monitoring period could not precede maximum medical improvement. 1983 Minn.Laws ch. 290, §§ 49, 52. When, however, section 176.101, subdivision 3e was amended in 1984 to permit a 3e job offer to be made prior to maximum medical improvement, the 3e job offer no longer tied the commencement of

the monitoring period to maximum medical improvement. 1984 Minn.Laws ch. 432, art. 2, § 3. That a 3e job may be offered and even commenced prior to the attainment of maximum medical improvement is not, however, dispositive either of entitlement to compensation for permanent partial disability or of whether such compensation shall be paid as economic recovery compensation or impairment compensation; it is service of the notice of maximum medical improvement that sets in motion the process that ultimately results in determination of the extent of permanent partial disability and the nature of the benefits to which the employee is thereafter entitled. Minn.Stat. § 176.101, subd. 3p (1990).[3] *See Hammer v. Mark Hagen Plumbing & Heating,* 435 N.W.2d 525, 528–29 (Minn. 1989); *Patton v. Thompson Electric Co.,* 420 N.W.2d 596, 598 (Minn.1988). Monitoring period compensation is an element of compensation for permanent partial disability. *See Hankermeyer v. Kloster–Madsen, Inc.,* 43 Minn.Workers Comp. Dec. 21 (WCCA 1990).[4] Because the length of the monitoring period cannot be determined until permanent partial disability has been ascertained and because the full extent of permanency cannot be determined until the employee has reached maximum medical improvement, we are of the opinion that even though the 1983 definition of "monitoring period" and the provision for payment of monitoring period compensation remain unchanged, the commencement of the monitoring period must remain tied to maximum medical improvement in the same manner as the payment of economic recovery compensation pursuant to Minn. Stat. § 176.101, subd. 3p (1990).

██ The WCCA correctly noted that because monitoring period compensation is

---

3. Minn.Stat. § 176.101, subd. 3p reads in relevant part:

   Where the employee has a permanent partial disability and has reached maximum medical improvement or upon completion of an approved retraining program, whichever is later, that employee shall receive economic recovery compensation pursuant to subdivision 3a if no job offer meeting the criteria of the job in subdivision 3e is made within 90

days after reaching maximum medical improvement or 90 days after the end of an approved retraining plan, whichever is later.

4. In *Hankermeyer,* it was held that when economic layoff occurs prior to maximum medical improvement, economic recovery compensation is payable rather than monitoring period compensation unless there is a timely offer of other suitable employment.

an element of compensation for permanent partial disability and is not a wage replacement benefit, the compensation judge erred in concluding that a diligent job search was necessary for eligibility for such compensation. Nevertheless, the WCCA declined to modify the award of monitoring period compensation because the employee did not appeal that determination. It must, however, be remembered that the employee was not an aggrieved party with respect to the compensation judge's award, the amount of which exceeded the maximum amount of the employee's entitlement to compensation for permanent partial disability under a proper construction of the statute. Certainly, it would not have been improper to call attention to the compensation judge's error by cross-appeal to the WCCA. On the other hand, once the award of compensation for permanent partial disability was reduced from economic recovery compensation to impairment compensation, it was incumbent on the WCCA to modify the award of monitoring period compensation in order to provide the proper total award of compensation for permanent partial disability.

Therefore, we affirm the award of impairment compensation, reverse the partial denial of monitoring period compensation, and remand for recalculation of monitoring period compensation in accordance with this opinion.

Affirmed in part, reversed in part, and remanded.

The employee is awarded $400 in attorney fees.