**Lisa HOPP, Relator,**

v.

**GRIST MILL and Kemper Insurance Company, Respondents.**

**No. C5-93-219.**

Supreme Court of Minnesota.

May 14, 1993.

Charles M. Cochrane, Minneapolis, for appellant.

Jerry D. Van Cleave, Bloomington, for respondents.

SIMONETT, Justice.

We review on certiorari a decision of the Workers' Compensation Court of Appeals reversing a compensation judge's determination that certain medical treatment, gastric bypass surgery, is reasonable and necessary to cure or relieve the effects of a compensable thrombosis. We reverse and reinstate the decision of the compensation judge.

Lisa Hopp worked on the production line for The Grist Mill which is located in Lakeville, Minnesota. On December 13, 1990, she sustained a compensable right knee injury which was initially treated as a knee strain; however, because of persisting complaints of pain, swelling and "heaviness" in the right leg, and because employee is morbidly obese and had a history of a superficial thrombophlebitis in the left leg, employee was referred to an orthopedic specialist who ordered an ultrasound venous doppler study. When the results of the ultrasound showed a deep venous thrombosis involving the right popliteal and femoral veins, employee was hospitalized and treated with "intravenous heparin and oral Coumadin (an anti-coagulant) * * * along with Ace wraps, elevation, and heat to the leg." Following the hospitalization, employee remained on anti-coagulant therapy.

Employee was eventually referred to the University of Minnesota for a "multi-discipline evaluation" of her right knee and leg problems. She was initially seen by Dr. Michael Caldwell, Director of the Wound Healing Program at the University of Minnesota and specialist in venous disease. Dr. Caldwell ordered another ultrasound which was followed by a venogram that suggested "a substantial amount of thrombus of the superficial femoral vein and incompetency of the deep valvular system above the thrombus on the right with an incompetent greater saphenous vein on the right." Dr. Caldwell felt this thrombus, which extended from the area of the knee up to the groin, was related to the injury employee received to her right knee.[1]

Dr. Caldwell initially recommended conservative treatment with a Jobst pump, stockings and Coumadin. The record indicates that Dr. Caldwell ultimately felt that

---

**1.** Dr. Caldwell explained that deep venous phlebitis and thrombus clot formation commonly occur when three factors are present: a hypercoagulable state, a slowing of blood flow within an area, and an injury to the vein itself. The medical expert retained by employer/insurer, Dr. James Sturm, agreed the work injury initiated the thrombosis process in the right leg.

Dr. Sturm and Dr. Caldwell also appeared to agree that this was a deep venous problem, unrelated to employee's previous history of left leg superficial thrombophlebitis. As Dr. Caldwell said, the prior episode of superficial thrombophlebitis in the left leg was a "different kettle of fish."

weight loss would be essential in the treatment of employee's injury-related thrombosis. He then referred employee to Dr. Buchwald, Professor of Surgery at the University for gastric surgery evaluation as employee had unsuccessfully attempted weight reduction through conventional diet control methods. Following his examination, Dr. Buchwald said obesity surgery was appropriate. Employee was also evaluated by Dr. Elizabeth Arendt, Orthopedic Surgeon at the University, and she believed the surgery would help to alleviate employee's knee problem.

Employee sought approval for the gastric bypass surgery pursuant to Minn.Stat. § 176.135, subd. 1(a) (1990),[2] as reasonably required to cure or relieve the effects of the thrombus in her right leg. Grist Mill and its workers' compensation liability carrier, Kemper Insurance, then referred employee to Dr. James Finell, an internist, who examined her in April 1992. Dr. Finell believed employee's "thrombophlebitis" was due to her morbid obesity and not her knee injury; and he also believed the proposed gastric bypass surgery was related to her obesity and for the treatment of her health in general. Employer/insurer declined to authorize payment for the procedure.

■ The compensation judge determined employee's right knee and right leg venous conditions were causally related to the December 1990 work injury, that the proposed gastric bypass surgery was reasonably necessary to cure or relieve from the effects of the right leg venous condition, and that employee had therefore not attained maximum medical improvement.[3] On appeal, the Workers' Compensation Court of Ap-

peals affirmed the determination that the deep venous condition was compensable but reversed the determination that the proposed surgery was also compensable, concluding that the gastric bypass surgery was not aimed at treating employee's deep venous condition, but "[r]ather, it appears the purpose of the proposed surgery is the management of the employee's long-standing obesity and its consequent risks and complications." *Hopp v. Grist Mill,* —— Minn. Workers' Comp. Dec. ——, slip op. at 6 (WCCA January 5, 1993).

■ Employee argues that the WCCA, without apparent justification, failed to accept inferences the compensation judge had reasonably drawn from the evidence. *Courtney by Higdem v. City of Orono,* 463 N.W.2d 514, 517 (Minn.1990). *Cf.,* Minn.R.Civ.P. 52.01. We have carefully examined the record and have concluded the compensation judge's decision should have been affirmed.

Both parties examined Dr. Caldwell at length as to the purpose of the proposed course of medical treatment; and in response to several inquiries by employer/insurer's counsel, Dr. Caldwell testified that his recommendation for weight reduction was directed principally to, and essential for, improvement of the thrombus in the right leg. Dr. Caldwell acknowledged employee's general health would benefit from weight reduction, but he made it quite clear that his involvement was directed primarily to the medical care of employee's deep venous thrombosis, which was an ongoing problem. It was this condition for which he made his recommendation for weight reduction; and as alternatives to surgery

---

**2.** Minn.Stat. § 176.135, subd. 1(a) (1990) provides in relevant part:
   The employer shall furnish any medical, * * * surgical and hospital treatment * * * as may reasonably be required at the time of the injury and any time thereafter to cure and relieve from the effects of the injury.

**3.** At the hearing, the parties agreed that, in this case, the maximum medical improvement determination would be linked to the gastric bypass surgery determination. It bears noting, however, that generally the two-tier benefits system contemplates MMI as a legal standard in deter-

mining the end of temporary total compensation and ascertainment of permanent partial disability. *Hammer v. Mark Hagen Plumbing & Heating,* 435 N.W.2d 525, 528–29 (Minn.1989). Medical care, however, is not necessarily dependent on the right to compensation for wage loss or physical impairment. As the Act extends medical benefits to palliative measures useful to prevent pain and discomfort even though the treatment cannot effect a greater cure, *Castle v. City of Stillwater,* 235 Minn. 502, 51 N.W.2d 370 (1952), medical care may be required notwithstanding an MMI determination.

had already been exhausted, he believed employee was a surgical candidate. Dr. Buchwald felt stomach stapling was the "only reasonable therapy" for employee; and Dr. Arendt added her support for the procedure. Certainly the gastric bypass surgery would, as the WCCA observed, address other medical problems resulting from morbid obesity; but it must be remembered that although employee was predisposed to the development of phlebitis and thrombus, the deep venous condition in her right leg was not a preexisting problem. *See* footnote 1, *supra.* Rather, it was trauma-related, still "present in the right system," and required further medical management. We conclude that the compensation judge's determination as to the purpose of the surgical procedure had sufficient evidentiary support. *Hengemuhle v. Long Prairie Jaycees,* 358 N.W.2d 54, 60 (Minn.1984); Minn.Stat. § 176.421, subd. 1 (1992); *see also Northern States Power Co. v. Lyon Food Products, Inc.,* 304 Minn. 196, 201, 229 N.W.2d 521, 524 (1975). *Compare Adkins v. University Health Care Center,* 405 N.W.2d 231 (Minn.1987) (denial of authorization for gastric bypass affirmed on review on certiorari where findings that procedure was not reasonable or necessary had evidentiary support).

Accordingly, the decision of the Workers' Compensation Court of Appeals is reversed and the compensation judge's decision reinstated.

Reversed and decision of compensation judge reinstated.