**James PELOWSKI, Relator,**

v.

**K–MART CORPORATION, Self–Insured/IHDS of Michigan, Ltd., Respondents.**

**No. C8–00–1644.**

Supreme Court of Minnesota.

June 7, 2001.

Timothy J. McCoy, McCoy, Peterson, Jorstad & Brabbit, Ltd., Minneapolis, for Employee-Relator.

Lee J. Keller, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, for Employer-Respondents.

## OPINION

PAUL H. ANDERSON, Justice.

The relator, James A. Pelowski, challenges a compensation judge's denial of his claim for medical benefits for back surgery and the Workers' Compensation Court of Appeals' affirmance of that denial. We affirm.

On January 7, 1997, Pelowski sustained a low back injury while employed by respondent K–Mart Corporation. He injured his back when he lifted a pallet off the floor and then turned and threw the pallet into a return bin. At the time, he had been working for K–Mart for nearly 14 years.

Pelowski first sought medical care from his family physician, who diagnosed a lower back strain and prescribed physical therapy and pain medication. Pelowski's back pain persisted, and he was referred to an orthopedic surgeon, who diagnosed Pelowski's injury as a lumbosacral sprain. The orthopedic surgeon did not believe Pelowski was a candidate for back surgery, so he treated Pelowski with a series of epidural steroid injections. Pelowski subsequently was referred to another surgeon who diagnosed nonradicular low back pain and this surgeon similarly saw "no surgical indication." During a follow-up exam on March 24, 1997, Pelowski's family physician noted that he did not believe Pelowski had a "surgically treatable problem currently."

In April 1997, Pelowski saw a neurologist who thought Pelowski might have a lumbar radiculopathy related to an L4–5 abnormality, but the neurologist stated he did not have "solid evidence" of this diagnosis. The neurologist recommended conservative care and referred Pelowski to a physical medicine and rehabilitation specialist. This specialist noted that prior diagnostic testing, including a recent MRI,

indicated degenerative disc disease, but the specialist found no "surgical indication on [Pelowski's] examination or symptoms." In November 1997, following a flare-up of lower back pain, Pelowski made a return visit to the neurologist. The neurologist again did not believe Pelowski was a candidate for surgery unless he developed "more constant pain or numbness or weakness in the legs."

In early 1998, the neurologist referred Pelowski to another orthopedic surgeon for a surgical evaluation. At this time, Pelowski described himself as being "basically just miserable." The orthopedic surgeon recommended surgery only as a "last option" and only if "after trying conservative treatment [Pelowski] feels the quality of his life is so badly affected that he wants to proceed with surgery * * *." During a follow-up visit in June 1998 with the same orthopedic surgeon, Pelowski reported a worsening of symptoms, but the surgeon still recommended conservative care. In September 1998, Pelowski told the surgeon he was unable to sleep or sit due to back-related symptoms and that he wanted to pursue a surgical option. Following a "positive discogram," in October 1998, the surgeon recommended a two-level arthrodesis. A neurologist later concurred with this recommendation.

Meanwhile, Pelowski was examined by K–Mart's medical examiner, also a neurosurgeon, who diagnosed chronic lower back pain syndrome. K–Mart's medical examiner did not believe that surgery would be necessary unless conservative measures failed to alleviate Pelowski's low back symptoms and diagnostic testing showed lumbar instability. Following the orthopedic surgeon's subsequent recommendation for surgery, K–Mart's medical examiner reviewed the various medical records relied on by Pelowski's orthopedic surgeon who recommended surgery and

again concluded that surgery was not appropriate. K–Mart then refused to authorize payment for the surgical procedure.

In March 1999, Pelowski filed a claim petition with the Department of Labor and Industry seeking approval for his back surgery. While the claim was still pending, he made arrangements for the surgery through his health insurer and obtained a second opinion from an orthopedic surgeon for that purpose. On September 22, 1999, he had an anterior interbody lumbar fusion at L3–4 and L4–5. In a follow-up visit on October 28, 1999, Pelowski told his surgeon that his back-related symptoms had improved.

■ Pelowski's medical benefits dispute came on for hearing before a compensation judge of the Office of Administrative Hearings in November 1999. The compensation judge found that the treatment parameter of Minn. R. 5221.6500, subp. 2C(1)(d), applied to Pelowski's claim; that the requirements of degenerative disc disease with a positive discogram at one or two levels had been met, but that Pelowski "did not have consistent symptoms which would indicate the need for fusion surgery." The judge then went on to find that Pelowski had failed to meet his burden of proving that the surgery was compensable and thus denied the claim. On appeal, the Workers' Compensation Court of Appeals (WCCA) affirmed on the grounds that the record supported the compensation judge's choice between conflicting expert opinions. By writ of certiorari, Pelowski has sought review of that decision.

■ When reviewing the findings of a compensation judge, the WCCA may not disregard the compensation judge's findings, but must affirm the findings unless they are "clearly erroneous and unsupported by substantial evidence in view of the entire record as submitted." Minn.Stat. § 176.421, subd. 1 (2000). Substantial evidence is evidence that a reasonable mind might accept as adequate. *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54, 59 (Minn.1984). Although the WCCA is required to look at all the evidence in performing its review function, it must give due weight to the compensation judge's opportunity to evaluate the credibility of the witnesses and must uphold findings based on conflicting evidence or evidence from which more than one inference might reasonably be drawn. *Id.* at 59–60. When we review a matter on certiorari, we will not disturb findings affirmed by the WCCA unless the findings are manifestly contrary to the evidence or unless the evidence clearly requires reasonable minds to adopt a contrary conclusion. *Id.* at 61.

■ Minnesota Statutes § 176.135, subd. 1(a) (2000), states that an employer is to furnish "any medical, psychological, chiropractic, podiatric, surgical and hospital treatment * * * as may reasonably be required at the time of the injury and any time thereafter to cure and relieve from the effects of the injury."[1] Under legislation enacted to control medical costs in the workers' compensation system, the Department of Labor and Industry promulgated treatment parameter rules for health care provider treatment. *Hirsch v. Bartley–Lindsay Co.*, 537 N.W.2d 480, 483 (Minn.1995). The rules "provide the yardstick by which the treatment offered by the health care provider is measured" and aid the trier of fact "in identifying reason-

---

1. The phrase "cure and relieve" has been construed to mean "cure or relieve." *Castle v. City of Stillwater*, 235 Minn. 502, 508, 51 N.W.2d 370, 373 (1952); *Eberle v. Miller*, 170 Minn. 207, 210, 212 N.W. 190, 191 (1927), *overruled in part by Johnson v. Iverson*, 175 Minn. 319, 222 N.W. 508 (Minn.1928).

able and appropriate medical treatment." *Jacka v. Coca–Cola Bottling Co.*, 580 N.W.2d 27, 35 (Minn.1998). The rules endeavor to provide "a large measure of uniformity and certainty as to compensable treatment." *Id.*

The applicable parameter in this case, Minn. R. 5221.6500, subp. 2C(1)(d) (2000), provides that lumbar arthrodesis surgery is reasonably required if the employee has incapacitating low back pain for more than 3 months and degenerative disc disease with a positive discogram at one or two levels of the spine.[2] Here, the compensation judge found that although Pelowski had degenerative disc disease with a positive discogram at one or two levels, he had not had incapacitating low back pain. The WCCA stated the compensation judge's finding that Pelowski did not satisfy the treatment parameters was "questionable," but it affirmed the denial of benefits on alternate grounds—that the compensation judge's choice between expert opinions had the requisite evidentiary support.

 As a general rule, the trier of fact's choice between experts whose testimony conflicts is upheld unless the facts assumed by the expert in rendering his or her opinion are not supported by the evidence. *Nord v. City of Cook*, 360 N.W.2d 337, 342–43 (Minn.1985), *distinguished by Dille v. Knox Lumber/Division of Southwest Forest*, 452 N.W.2d 679, 681 (Minn. 1990). But the treatment parameter rules provide the "yardstick" by which the propriety of treatment is measured and contemplate a "large measure" of "certainty as to compensable treatment." *Jacka*, 580 N.W.2d at 35. In the context of claims for medical treatment outside the rules, we have said that a compensation judge may depart from the rules only *"in those rare cases* in which departure is necessary to obtain proper treatment." *Asti v. Northwest Airlines*, 588 N.W.2d 737, 740 (Minn. 1999) (quoting *Jacka*, 580 N.W.2d at 35– 36) (emphasis in original). With the exception of the "rare case," when the treatment parameter criteria have been satisfied, a claim for such treatment ought not to be defeated by the opinion of an expert who generally does not accept the treatment parameter criteria. In the absence of circumstances warranting a departure from treatment parameter rules, treatment in compliance with the parameter rules should be compensable. Having said this, we nevertheless affirm.

The compensation judge's decision, which was, in essence, a credibility determination, was premised on the inconsistencies in the employee's sworn testimony and medical records as well as the deposition testimony of the independent medical consultant whose testimony contradicted the employee's claims. The assessment of a witness' credibility is the unique function of the trier of fact. *Tolzmann v. McCombs–Knutson Assocs.*, 447 N.W.2d 196, 198 (Minn.1989). It is not the function of a reviewing court to evaluate "the credibility and probative value of witness testimony and to choose different inferences from the evidence than the compensation judge." *Redgate v. Sroga's Stan-*

---

**2.** Minn. R. 5221.6500 provides in relevant part:

Subp. 2. Spinal surgery.
 C. Lumbar arthrodesis with or without instrumentation.
 (1) Indications: one of the following conditions must be satisfied to indicate that the surgery is reasonably required:
 * * * *

(d) incapacitating low back pain * * * for longer than three months, and one of the following conditions involving lumbar segments L–3 and below is present:
 i. for the first surgery only, degenerative disc disease * * * with postoperative documentation of instability created or found at the time of surgery, or positive discogram at one or two levels * * *.

*dard Serv.*, 421 N.W.2d 729, 734 (Minn. 1988); *see Luthens v. Glencoe Red & White Store*, 264 Minn. 26, 31, 117 N.W.2d 386, 389 (1962). In his decision, the compensation judge noted the inconsistencies in the employee's testimony as they related to material issues in his claim for medical benefits. The judge also found that there was a "real lack of objective findings which suggest such incapacity and the need for the surgery * * *." We hold that the compensation judge's findings were supported by evidence that "a reasonable mind might accept as adequate." *Redgate*, 421 N.W.2d at 734; *cf. Hengemuhle*, 358 N.W.2d at 60–61. Therefore, we affirm the Workers' Compensation Court of Appeals' decision affirming the compensation judge's decision to deny benefits.

Affirmed.

GILBERT, Justice (dissenting).

I respectfully dissent from the majority opinion. I would reverse the Workers' Compensation Court of Appeals and remand to the compensation judge for a finding on the treatment parameters at issue: "incapacitating low back pain for longer than 3 months." Minn. R. 5221.6500, subp. 2C(1)(d). The Workers' Compensation Court of Appeals stated that "it is questionable whether the record supports a finding that the employee did not satisfy the treatment parameters." I agree. The WCCA committed reversible error at this point.

In affirming the comp judge, the WCCA digressed into a choice of experts' analysis based on a credibility determination. The WCCA thus avoided deciding this case on the merits, *i.e.*, the treatment parameters. The majority opinion affirms this digression and misstates the record relating to a finding of the compensation judge that relator "had not had incapacitating lower back pain." In fact, the compensation judge analyzed the case in terms of left leg pain and instability rather than low back pain. This was clearly erroneous and ignored substantial evidence of lower back pain. The employee testified to constant pain in the low back all the time "and that basically I was just miserable." As the Workers' Compensation Court of Appeals pointed out, the compensation judge failed to analyze the case in terms of or even mention the required low back pain in his findings and spent four pages in its decision analyzing the employee's complaint of left leg pain and instability.

Obviously, an error was made in the compensation judge's analysis. This error goes beyond simply a choice between experts. The treatment parameter regulations were designed to remove this uncertainty and to provide the needed health care treatment once the parameters were met. Here, the compensation judge found that there was the required degenerative disc disease with a positive discogram at one or two levels of the spine, but then skipped over the second part of the treatment parameters and decided the case based on the need for treatment rather than determine if there was low back pain. The compensation judge framed the question as follows: "does the employee have the type of 'pain' that is 'incapacitating' and requires surgery." First of all, that is not the question to be answered. The proper question relates to whether there was incapacitating lower back pain. If there was, surgery was reasonable and proper pursuant to Minn. R. 5221.6500, subp. 2C(1). Furthermore, as the WCCA pointed out, the term incapacitating lower back pain as used in the treatment parameters does not require total disability. Here, the uncontradicted record is that the employee had experienced constant pain in his low back from 1998 up to the time of

the surgery, as well as numbness in his left upper thigh with giving out of his left leg. He was not able to keep up normal recreational activities and was unable to sleep or sit secondary to the pain.

The compensation judge based his decision on the belief that relator did not have consistent symptoms, which would indicate the need for a fusion surgery. The compensation judge then wrote in his findings "having thus made numerous circuits of the proverbial barn it appears that the final dispute comes down to what it essentially always comes down to, a credibility judgment by the Compensation Judge." The compensation judge then digressed to analyze only the left leg pain and concluded that "the employee did not have consistent symptoms which would indicate the need for a fusion surgery," and adopted the opinions of Dr. Daniel Ahlberg as set forth in his report as to why he did not believe surgery was reasonable and necessary.

These findings do not address the treatment parameter of incapacitating back pain nor did the compensation judge make any credibility determination based on the relator's testimony about low back pain. Rather, the compensation judge converted his decision into a dispute between the two experts as to whether or not this type of surgery would be recommended. The credibility determination related solely to the leg pain with no findings or discussion on low back pain. Indeed, Dr. Ahlberg does not even opine on the ultimate issue of whether or not there is a history of incapacitating back pain, but uses an incorrect analysis. The WCCA also erred when it based its decision on a choice of experts rather than the low back treatment parameter. The findings are to be directed to the treatment parameters, not the treatment.

Accordingly, I would reverse and remand to the compensation judge for appropriate findings on the treatment parameter at issue whether relator had incapacitating low back pain for longer than 3 months.

PAGE, Justice (dissenting).

I join in the dissent of Justice James H. Gilbert.