Edwin J. **JACKA**, Employee,

v.

**COCA–COLA BOTTLING COMPANY,**
**Self–Insured, Employer,**

and

**Arvold Chiropractic Clinic, Minnesota**
**Department of Labor & Industry,**
**Intervenor,**

and

Patrick **KELLEY**, Employee,

v.

**VIKING AUTO SALVAGE and State**
**Fund Mutual Insurance Company,**
**Employer and Insurer,**

and

**Minnesota Department of Labor**
**and Industry, Intervenor.**

No. C4–97–1418.

Supreme Court of Minnesota.

June 11, 1998.

Mark J. Fellman, St. Paul, for Edwin J. Jacka.

John T. Thul, Cousineau, McGuire & Anderson, Chartered, Minneapolis, for Coca–Cola Bottling Company.

Hubert H. Humphrey III, Attorney General, Susan C. Gretz, Assistant Attorney General, St. Paul, for Minnesota Department of Labor & Industry.

Joseph J. Osterbauer, Minneapolis, for Patrick Kelley.

Andrew W. Lynn, Anne E. Kevlin, Lynn, Scharfenberg & Associates, Eden Prairie, for Viking Auto Salvage and State Fund Mutual Ins. Co.

## OPINION

BLATZ, Chief Justice.

This case comes to us on a certification order issued by the chief administrative law judge of the Office of Administrative Hearings pursuant to Minn.Stat. § 176.325, subd. 1 (1996). The four questions certified inquire broadly into the validity and proper application of the permanent treatment parameter rules promulgated by the Minnesota Department of Labor and Industry (D.O.L.I.) pursuant to its authority to institute rules establishing standards and procedures for health care provider treatment under Minn.Stat. § 176.83, subd. 5 (1994).

This case is the first to certify questions pursuant to section 176.325 of the Workers' Compensation Act. As such, this

case presents the opportunity to set the requirements for future certified questions of workers' compensation law.[1] A question may be certified only if it is important and doubtful.[2] A question is doubtful if there is no controlling precedent and there is substantial ground for a difference of opinion.[3] A question's importance depends upon the likelihood that the resolution of the question will have statewide impact, the probability of reversal, the length of proceedings terminated by reversal, and the amount of harm that would be inflicted on the parties by an incorrect ruling.[4] The certification process is not a substitute for the normal appellate process nor a method for securing advisory opinions.[5] While it is the exceptional case that will meet the criteria set forth above, we accept the questions presented here as important and doubtful.

 In framing the questions to be certified under the Workers' Compensation Act, the chief administrative law judge, or alternatively, the Commissioner of the Minnesota Department of Labor and Industry, should be guided by the requirements we have established for other certified questions. For example, the certification order must specify the precise legal question and laws at issue and include specific findings of fact relevant to the question presented.[6] Otherwise, if

such specificity is lacking, the question may request an impermissible advisory opinion.[7] In a contested proceeding, a legal question may examine the validity of a rule only as applied to the facts of the case.[8]

The certified questions submitted in this case do not meet these requirements because they fail to designate the specific rules at issue in this contested proceeding or the specific statutory and constitutional grounds on which the rules are being challenged.[9] In the future, this court will hold certified questions to the standards enunciated in this opinion. However, because this is the first set of certified questions under the statute, this court has chosen instead to reframe the certified questions as follows:

I. Whether the Minnesota Department of Labor and Industry exceeded its statutory authority under Minn.Stat. § 176.83, subd. 5 (1994) in promulgating permanent treatment parameter rules 5221.6050, subp. 8 and 5221.6200, subp. 3?

II. Whether permanent treatment parameter rules 5221.6050, subp. 8 and 5221.6200, subp. 3 conflict with Minn. Stat. § 176.135, subd. 1 (1996) or the Due Process Clauses of the United States and Minnesota Constitutions? [10]

1. *See* Minn.Stat. § 176.325, subd. 2 (1996) (authorizing this court to set requirements for "submission of legal memoranda, oral argument, or other matters" in connection with certified questions).

2. Minn.Stat. § 176.325, subd. 1.

3. *See* Minn.Stat. § 176.325, subd. 1; *Emme v. C.O.M.B., Inc.*, 418 N.W.2d 176, 179–80 (Minn. 1988).

4. *Emme*, 418 N.W.2d at 180.

5. *Id.*

6. *See Duxor Inv. Aktiengesellschaft v. Investment Rarities, Inc.*, 413 N.W.2d 502, 504 (Minn.1987); *Hawkins v. Thorp Credit and Thrift Co.*, 441 N.W.2d 470, 472 (Minn.1989).

7. *Duxor*, 413 N.W.2d at 504.

8. *Manufactured Hous. Inst. v. Pettersen*, 347 N.W.2d 238, 240 (Minn.1984).

9. The questions, as presented in the certification order, were as follows:

I. Whether the Minnesota Department of Labor and Industry exceeded its statutory authority in promulgating the permanent treatment parameter rules, Minn. Rules 5221.6010 to 5221.6600;

II. Whether the permanent treatment parameter rules conflict with the Workers' Compensation Act, the Minnesota or U.S. Constitutions;

III. If the Minnesota Department of Labor and Industry did not exceed its statutory authority in promulgating the permanent treatment parameters, whether and how compensation judges must apply the permanent treatment parameters; and

IV. If the Minnesota Department of Labor and Industry did not exceed its statutory authority in promulgating the permanent treatment parameters, whether the treatment parameters apply to all dates of injury.

10. We recognize that the date of injury controls the governing medical benefits statute. However, we are citing to the current basic medical

III. If the Minnesota Department of Labor and Industry did not exceed its statutory authority in promulgating permanent treatment parameter rules 5221.6050, subp. 8 and 5221.6200, subp. 3, whether and how compensation judges must apply these rules?

IV. If the Minnesota Department of Labor and Industry did not exceed its statutory authority in promulgating permanent treatment parameter rules 5221.6050, subp. 8 and 5221.6200, subp. 3, whether the rules apply to all treatment provided after January 4, 1995, irrespective of the date of injury?

We answer questions one and two in the negative. We answer question three in holding that compensation judges must use permanent treatment parameter rules 5221.6050, subp. 8 and 5221.6200, subp. 3 as standards which establish the limits of compensable treatment in all but the most exceptional circumstances. We answer question four in the affirmative.

This action represents the consolidation of the workers' compensation cases of Edwin Jacka and Patrick Kelley. Edwin Jacka's case stems from a sprain he sustained to his lumbar back on June 22, 1993, in the course of his employment with Coca–Cola Bottling Company. On May 23, 1994, Jacka began treatment with chiropractor Dr. Jordan R. Arvold and continued treatment through the date of his hearing on June 19, 1996. The employer/insurer disputed liability for treatments rendered by Dr. Arvold from October 17, 1994 to June 19, 1996. Following a hearing, the compensation judge issued findings and an order determining, among other things, that the treatment rendered by Dr. Arvold provided significant relief for Jacka's condition, was consistent with accepted chiropractic practice, and was not excessive. During the disputed period of time, Jacka's chiropractic treatment was reduced to once every month or two. Additionally, while the judge found that the treatment rendered af-

ter April 3, 1995, was not authorized under the permanent treatment parameters of Minn. R. 5221.6200, subp. 3 and 5221.6010, subp. 2 he also found that the treatment was an appropriate departure from the parameters pursuant to Minn. R. 5221.6050, subp. 8D because it improved Jacka's subjective complaints and his functional status. On this basis, the judge awarded payment to Arvold Chiropractic Clinic for essentially all of Jacka's outstanding treatment expenses.

In the second case, Patrick Kelley injured his cervical spine in a car accident in the course of his employment with Viking Auto Salvage (Viking) on December 22, 1994. On January 5, 1995, he began receiving treatment from chiropractor Dr. Stephen Bappe for the injury and continued treatment through the date of his compensation hearing. On May 26, 1995, State Fund Mutual (State Fund), the insurer, notified Dr. Bappe of the permanent treatment parameters and requested documentation supporting the effectiveness of ongoing chiropractic treatment. Dr. Bappe did not respond. Thereafter, Viking and State Fund disputed liability for treatment rendered by Dr. Bappe from May 26, 1995, through July 31, 1996.

Following a hearing on July 31, 1996, the compensation judge found that the chiropractic care rendered by Dr. Bappe was reasonable and necessary to cure and relieve the effects of Kelley's work injury. Further, the judge found that the permanent treatment parameter rules did not apply to Kelley for the following reasons: the rules did not apply to Kelley's date of injury, the rules were in conflict with this court's decision in *Hirsch v. Bartley–Lindsay Co.*, 537 N.W.2d 480 (Minn. 1995), and the rules conflicted with the intent of Minn.Stat. § 176.135. The compensation judge then ordered Viking and State Fund to pay the outstanding balance due to Dr. Bappe.

On appeal, the Workers' Compensation Court of Appeals bifurcated the issues relating to the permanent treatment parameters in *Jacka* from other issues of liability on appeal and, in an order dated March 17,

benefits statute for the sake of simplicity since the statute has not been altered significantly

since either Jacka's or Kelley's date of injury.

1997, consolidated *Jacka* and *Kelley* and joined D.O.L.I. as an intervenor. The consolidated case was referred to a compensation judge for hearing at which the parties were to present evidence regarding the validity of the permanent treatment parameters. At a pretrial hearing, the judge received into evidence the records of the rulemaking proceedings concerning the permanent treatment parameters. Then, prior to any further proceedings, the chief administrative law judge issued the certification order to this court.

## I.

■ We are first asked to determine whether, in promulgating the permanent treatment parameter rules at issue, D.O.L.I. exceeded its authority under Minn.Stat. § 176.83, subd. 5 by placing undue restrictions on the discretion of compensation judges to determine the necessity for medical treatment. The permanent treatment parameters at issue are Minn. R. 5221.6050, subp. 8 (listing reasons for departure from the treatment parameters) and Minn: R. 5221.6200, subp. 3 (establishing parameters for passive treatment of low back pain, including chiropractic care). Since the certified questions are of a purely legal nature, this court reviews the issues de novo.[11]

To a large extent, the workers' compensation adjudication system is based on the judicial model of decisionmaking.[12] The compensation judge serves as a factfinder who must develop all of the evidence through hearings and as a decisionmaker who must issue a decision based upon the relevant evidence.[13] In this role, the compensation judge is responsible for determining whether medical treatment is "reasonably required" within the scope of Minn.Stat. § 176.135, subd. 1.

Not inconsistent with this scheme, and consistent with the legislature's prerogative to make whatever adjustments and corrections to the workers' compensation statutory system it deems appropriate,[14] the legislature

has authorized D.O.L.I. to establish rules and schedules in a number of areas to guide compensation judges in the determination of proper benefits. One such area is the determination of necessary and compensable medical treatment. The legislature has directed D.O.L.I. to develop rules which establish standards and procedures for treatment of workers' compensation injuries pursuant to Minn.Stat. § 176.83, subd. 5, which provides in relevant part:

> In consultation with the medical services review board or the rehabilitation review panel, the commissioner shall adopt emergency and permanent *rules establishing standards and procedures* for health care provider treatment. * * * The rules shall be used to determine whether a provider of health care services and rehabilitation services * * * is performing procedures or providing services at a level or with a frequency that is excessive, unnecessary, or inappropriate based upon accepted medical standards for quality health care and accepted rehabilitation standards.

> The rules shall include but are not limited to, the following:

> (1) *criteria* for diagnosis and treatment of the most common work-related injuries including, but not limited to, low back injuries * * *.

> * * * * * *

> If it is determined by the payer that the level, frequency or cost of a procedure or service of a provider is excessive, unnecessary, or inappropriate according to the standards established by the rules, the provider shall not be paid for the procedure, service, or cost * * * unless the commissioner or compensation judge determines at a hearing or administrative conference that the level, frequency, or cost was not excessive * * *.

(emphasis added).

We interpreted this legislation in *Hirsch* in relation to the emergency treatment parame-

---

**11.** *Jacobsen v. Anheuser–Busch, Inc.,* 392 N.W.2d 868, 872 (Minn.1986).

**12.** *Hirsch v. Bartley–Lindsay Co.,* 537 N.W.2d 480, 486 (Minn.1995).

**13.** *Id.* at 486–87, Minn.Stat. §§ 176.371, 176.411 (1996).

**14.** *See Parson v. Holman Erection Co., Inc.,* 428 N.W.2d 72, 76 (Minn.1988).

ter rules—the predecessor to the permanent treatment parameter rules.[15] In *Hirsch,* we determined that this legislation did not evidence an intent on the part of the legislature to tamper with the role of the compensation judge as a decisionmaker in determining the necessity for medical treatment under Minn. Stat. § 176.135, subd. 1(e).[16] Rather, we concluded that the language of the statute, calling for "standards" and "criteria," implicitly recognized the need for flexibility and judicial discretion in making this determination.[17] Accordingly, we held that the emergency treatment parameter rules at issue in *Hirsch,* including Minn. R. 5221.6200, subp. 3 and 5221.6050, subp. 8C, conflicted with the enabling legislation and Minn.Stat. § 176.135, subd. 1(e) because they were binding regulations which encroached upon the role of the compensation judge by limiting the grounds for departing from the parameters to an exclusive list and placing durational limits on medical services.[18] Additionally, we found that the durational limits on medical services in emergency treatment parameter rule 5221.6200, subp. 3 conflicted with the basic medical provisions in Minn.Stat. § 176.135, subd. 1 which guarantee that reasonably necessary medical care may be received any time after the injury.[19]

The permanent treatment parameter rules at issue in this case are significantly different than the emergency treatment parameter rules we evaluated in *Hirsch.* The permanent treatment parameters for low back pain, provided by Minn. R. 5221.6200, subp. 3 no longer place absolute limits on the duration of treatment. Although the rule initially limits passive treatment of the back to 12 calendar weeks after treatment is initiated, the treatment may be extended by an additional 12 visits over 12 months if certain conditions are met.[20] Beyond this additional period, further treatment may be provided if it is approved by the insurer, commissioner or compensation judge based on documentation

that the treatment is effective in maintaining employability or, for a permanently totally disabled employee, in maintaining functional status.[21]

The rule regulating departure from the permanent treatment parameters, Minn. Rule 5221.6050, subp. 8, also varies significantly from its predecessor in that it does not state that it provides the *exclusive* means of departing from the rules. In contrast, the language in the invalidated emergency parameter, Minn. R. 5221.6050 subp. 8C provided that the judge "shall consider only the following factors in determining whether treatment given or proposed is excessive."

The permanent treatment parameters allow departures for any one of the following situations: a documented medical complication; the previous treatment did not meet the accepted standards of practice; the treatment is necessary to assist the employee in returning to work and work places stress on the injured body part; there is an incapacitating exacerbation of the employee's condition; or the patient experiences improvement in two of the following three areas: subjective complaints of pain, objective clinical findings, or functional status.[22]

The extensive changes incorporated in the permanent treatment parameter rules provide the compensation judge with the flexibility to extend medical treatment for as long as it is medically necessary and effective. Further, the rules allow the judge to depart from the parameters when appropriate, unlike the emergency treatment parameter rules invalidated in *Hirsch.* Additionally, the legislature has clarified its intent as to how the rules should interact with the compensation judge's role in determining reasonably necessary treatment under Minn.Stat. § 176.135, subd. 1 by amending the enabling legislation to include specific references to that statute:

15. 537 N.W.2d 480.

16. *Id.* at 486–87.

17. *Id.* at 487.

18. *Id.* at 486–87.

19. *Id.* at 486.

20. Minn. R. 5221.6200, subp. 3B(1).

21. *Id.* at subp. 3B(2).

22. Minn. R. 5221.6050, subp. 8.

The rules shall be used to determine whether a provider * *, * is performing procedures, or providing services at a level or with a frequency that is excessive, unnecessary, or inappropriate under section 176.135, subdivision 1 * * *.

If it is determined by the payer that the level, frequency or cost of a procedure or service of a provider is excessive, unnecessary, or inappropriate according to the standards established by the rules, the provider shall not be paid * * * unless the commissioner or compensation judge determines * * * that the level, frequency or cost was not excessive under the rules * * *[23]

Although these amendments were adopted four months following the effective date of the permanent treatment parameters, they serve to clarify the legislature's original intent in enacting the 1994 statute—that the compensation judge should utilize the rules in determining appropriate treatment.[24] In considering these changes as clarifications, we are guided by the fact that the changes are not substantive and by the context in which the amendments were made. The amendments were adopted after the legislature had available to it the hearing report of Administrative Law Judge Bruce Campbell from the administrative hearings on the permanent treatment parameters, released in November of 1994.[25] This report discussed the challenges to the rules raised in *Hirsch,* in addition to numerous other cases in which the compensation judges ignored the emergency treatment parameters altogether.

In consideration of the permanent treatment parameter rules' inherent flexibility and the legislature's clarification of its intent to reconcile the compensation judge's decisionmaking role with the rules, we hold that D.O.L.I. did not exceed its authority under the enabling statute in promulgating Minn. R. 5221.6050, subp. 8 and 5221.6200, subp. 3.

## II.

 The second certified question asks us to determine whether permanent treatment parameter rules 5221.6050, subpart 8 and 5221.6200, subp. 3 conflict with Minn.Stat. § 176.135, subd. 1. In addition to the arguments presented above, Jacka and Kelley argue that these rules violate the statute by impermissibly limiting the right of the employee to receive medical treatment "as may reasonably be required at the time of the injury and any time thereafter to cure and relieve from the effects of the injury."[26] Jacka and Kelley contend that this statutory phrase has long been interpreted to make treatment that either cures or relieves the symptoms of a work injury compensable, without limitation on the duration of treatment.[27] Specifically, they argue that Minn. R. 5221.6200, subp. 3 contains impermissible durational limits because it places certain conditions on extensions of the 12–week limit. Also, they argue that both of the rules wrongfully restrict the employee's right to receive treatment which simply relieves pain, without healing it.

However, the basic medical treatment provisions of Minn.Stat. § 176.135, subd. 1 have never been interpreted to obligate the employer to pay for all treatment which cures or relieves, but only such medical treatment "as may *reasonably* be required." (emphasis added). The legislature empowered D.O.L.I. to enact rules establishing standards of reasonable treatment based on accepted medical standards. The rules at issue were adopted following an administrative hearing at which ample evidence of current medical standards concerning passive treatment of low back pain and the prolonged use of chiropractic treatment for pain management was examined. In that proceeding, the administrative

---

**23.** Minn.Stat. § 176.83, subd. 5 (Supp.1995) (amendments underlined).

**24.** The amendments were adopted on May 25, 1995.

**25.** *See* Minn.Stat. § 645:16(2) (providing that context in which enactments were made may be used to interpret legislative intent).

**26.** Minn.Stat. § 176.135, subd. 1.

**27.** *See Eberle v. Miller,* 170 Minn. 207, 210, 212 N.W. 190, 191 (1927); *Casey v. Northern States Power Co.,* 247 Minn. 295, 312–13, 77 N.W.2d 67, 78 (1956).

law judge found that the medical literature and the consensus of health care providers supported the guidelines established by the parameters.

Additionally, the standards established by the permanent treatment parameter rules are in harmony with factors considered by judges under established workers' compensation case law.[28] Importantly, it should be noted that the permanent treatment parameter rules do not prohibit treatment to relieve an employee's back pain after the guidelines in Minn. R. 5221.6200, subp. 3 are no longer met. Rather, the rules simply require a change from passive treatment, which is no longer deemed reasonably required, to treatment provided under the chronic pain management parameters. Therefore, we conclude that there is no conflict between Minn. Stat. § 176.135, subd. 1 and Minn. R. 5221.6050, subp. 8 and 5221.6200, subp. 3.

■ In addition to their statutory challenge, Jacka and Kelley also argue that Minn. R. 5221.6050, subp. 8 and 5221.6200, subp. 3 violate the Due Process Clauses of the United States and Minnesota Constitutions. They assert that the rules are not rationally related to the stated purpose of the enabling statute to determine "whether a provider of health care services * * * is performing procedures or providing services at a level or with a frequency that is excessive, unnecessary, or inappropriate"[29] because the rules focus upon health care delivery, rather than on the providers.

■ An administrative rule is invalid when it fails to comport with substantive due process because it is not rationally related to the objective sought to be achieved.[30] However, one who seeks to challenge a rule on due process grounds bears a heavy burden.[31] The employees have not met that burden in

this case. The rules are rationally related to the goal of regulating health care in that, by establishing standards for treatment, the rules provide the yardstick by which the treatment offered by the health care provider is measured. Moreover, the rules effectuate the purpose of the enabling statute in aiding the compensation judge in identifying reasonable and appropriate medical treatment.

### III.

■ The third certified question asks us to elaborate upon how compensation judges should apply Minn. Rules 5221.6050, subp. 8 and 5221.6200, subp. 3. In *Hirsch*, we held that the enabling statute authorizes standards and guidelines, rather than absolute regulations. Upon examining the permanent treatment parameters, we conclude that D.O.L.I. has met this mandate through the promulgation of treatment parameters that allow for variability and flexibility to accommodate the symptoms of an injured employee while providing a large measure of uniformity and certainty as to compensable treatment. The compensation judge's application of the permanent treatment parameters in *Jacka* demonstrates the flexibility inherent in the permanent rules. Although the judge found that Jacka's chiropractic treatment fell outside the basic treatment parameters, he applied Minn. R. 5221.6050, subp. 8D to determine that a departure was appropriate due to Jacka's demonstrated improvement in functional status and subjective complaints.

Because we have concluded that the rules at issue meet the requirements of the enabling statute, these validly promulgated administrative rules have the force and effect of law.[32] However, in recognition of the fact that the treatment parameters cannot anticipate every exceptional circumstance, we acknowledge that a compensation judge may

---

**28.** *See Fuller v. Naegle–Shivers Trading*, No. 486–42–5333, 1993 WL 154210, at *4 (W.C.C.A. Apr. 14, 1993) (listing the employee's psychological dependence on chiropractic care and the frequency, duration, and effectiveness of treatment as factors in determining whether medical care is reasonably required).

**29.** Minn.Stat. § 176.83, subd. 5.

**30.** *Mammenga v. State Dep't. of Human Serv.*, 442 N.W.2d 786, 789 (Minn.1989); *Williamson v.*

*Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 487–88, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

**31.** *Manufactured Hous. Inst. v. Pettersen*, 347 N.W.2d 238, 243 (Minn.1984).

**32.** *U.S. West Material Resources, Inc. v. Commissioner of Revenue*, 511 N.W.2d 17, 20 (Minn. 1994); Minn.Stat. § 14.38 (1996).

depart from the rules in those rare cases in which departure is necessary to obtain proper treatment.

## IV.

Finally, we are asked to determine whether the permanent treatment parameters at issue apply to all dates of injury. Minnesota Rules 5221.6020, subp. 2 provides that the permanent treatment parameters apply to all treatment provided after January 4, 1995, regardless of the date of injury. Jacka and Kelley claim that this rule conflicts with the general rule of law that a worker's right to benefits under the workers' compensation system, including medical and hospital treatment, is governed by the law in effect on the date of the injury "absent a clear manifestation of contrary legislative intent." [33]

We are not persuaded by this claim because the permanent treatment parameters do not retroactively change any right of the employee. The employee's right under Minn.Stat. § 176.135, subd. 1 is to treatment which is "reasonably required." Compensation judges determine what treatment is reasonably required according to medical standards at the time the treatment is rendered.[34] The rules simply guide the compensation judge in this determination. Therefore, although the right to appropriate treatment is fixed at the time of injury, the determination of what constitutes appropriate treatment changes over time as medical technology evolves and improves. To interpret the treatment parameters otherwise would lead to absurd results. As Administrative Law Judge Bruce D. Campbell explained in his administrative hearing report on the permanent treatment parameters, "[t]he argument that somehow application of the treatment standards involves a retroactive application of the rules to a past transaction is like arguing that someone injured before the invention of MRI scanning equip-

ment in approximately 1986 would not be entitled to an MRI test in the future, if necessary, because that test was unknown as of the date of his or her injury." [35]

In summary, we hold that the permanent treatment parameter rules adopted by D.O.L.I. are flexible and yielding and, therefore, ensure that reasonably priced, appropriate medical care will not be denied simply because of a time-line or rigid categories. At the same time, the rules are substantial enough to establish standards and procedures based on good medical practice that can be used to regulate provider abuses and reduce litigation over compensable treatment. We recognize, as the broader medical community has done, that rules establishing standards and procedures for managed care do not have to be at odds with the purpose of restoring the employee to good health. We conclude that these rules have struck the right balance between flexibility and substance and should have the respect, force and effect accorded other properly promulgated administrative rules.

---

**33.** *Sherman v. Whirlpool Corp.*, 386 N.W.2d 221, 225 (Minn.1986) (quoting *Leahy v. St. Mary's Hospital*, 339 N.W.2d 265, 267 (Minn.1983)). *See also Eberle,* 170 Minn. at 209, 212 N.W. at 191.

**34.** *See generally Schnider v. Schnider*, 449 N.W.2d 171 (Minn.1989).

**35.** Report of the Administrative Law Judge, In the Matter of the Proposed Adoption of Rules of the Minnesota Department of Labor and Industry, Workers' Compensation Division, Governing Workers' Compensation Treatment Parameters, Finding of Fact 31 (Minnesota Office of Administrative Hearings, Nov. 2, 1994).