**Gary ASTI, Relator,**

v.

**NORTHWEST AIRLINES, and Kemper Group, Respondents.**

No. C7–98–1939.

Supreme Court of Minnesota.

Feb. 11, 1999.

William H. Getts, Minneapolis, for relator.

Gilmore, Aafedt, Forde, Anderson & Gray, P.A., Charles S. Barmen, Minneapolis, for respondents.

## OPINION

GILBERT, J.

This case requires a determination of whether the relator, Gary Asti, is entitled to health club membership reimbursement for a period subsequent to his initial return to employment under Minn. R. 5221.6600, subp. 2B(3) (1997). The compensation judge held that Asti satisfied the departure requirements of Minn. R. 5221.6050, subp. 8C (1997), finding the membership reasonable and necessary treatment designed to assist Asti in returning to work and in allowing Asti to continue working. The Workers' Compensation Court of Appeals (WCCA) affirmed the compensation judge's finding that the health club membership was reasonable, necessary, and cost effective under case law principles. The WCCA then held the compensation judge's finding that the membership assisted Asti in his initial return to work was clearly erroneous. Instead, the WCCA held that because Asti returned to work nearly 6 months prior to the membership period in dispute, the membership did not assist Asti in his initial return to work. The WCCA reversed the compensation judge's award, holding that Asti failed to satisfy the departure requirements of Minn. R. 5221.6050, subp. 8C. While we agree with the WCCA's holding that Asti failed to satisfy the departure requirements, we conclude that the facts before us present one of "those rare cases in which departure [from the treatment parameter rules] is necessary to obtain proper treatment." *Jacka v. Coca-Cola Bottling Co.*, 580 N.W.2d 27, 35–36 (Minn.1998). We therefore reverse and reinstate the compensation judge's order as modified by the WCCA's February 10, 1998 decision.

Asti has been employed as a flight attendant since 1976. In April of 1986, while working as a flight attendant for Republic Airlines, Asti received a low back injury, for which he underwent surgery. In 1987, Asti began a treatment program prescribed by his neurologist. This program included a prescribed exercise program that Asti performed at a health club several times per week. The prescribed exercises required the use of equipment and the swimming pool located at the health club. The exercise program was designed to allow Asti to maintain the flexibility and proper muscle tone necessary for performance of his duties as a flight attendant. Asti's neurologist renewed the prescription for the exercise program annually through at least 1997. The cost of the health club membership was less than $600 per year.

On February 4, 1993, Asti was working as a flight attendant for respondent Northwest Airlines when he sustained a permanent aggravation of his previous low back injury. He again underwent surgery, and, following recuperation, continued the prescribed exercise program. Two years later, on September 21, 1995, Asti's low back injury was again permanently aggravated during the course of his employment as a flight attendant with Northwest. For a third time, Asti underwent surgery. According to the compensation judge, Asti's whole body permanent partial disability rating was 28 percent following his third injury. After recuperation, Asti again continued the prescribed exercise program.

Northwest Airlines and its insurer, the Kemper Group, disputed their liability for several of Asti's claims for reimbursement. In June of 1996, while Asti was not working due to his injury, the parties entered into a "to-date settlement" under which the respondents agreed to pay for Asti's health club membership through December 31, 1996. On or about July 1, 1996, Asti returned to his employment, and the respondents paid for the membership as agreed. However, re-

spondents refused to pay for the membership beyond December 31, 1996, questioning both the necessity of the membership and their responsibility for the payment of the membership under the Minnesota Workers' Compensation Act, Minn.Stat. ch. 176 (1998). Asti filed a Claim Petition with the Workers' Compensation Division requesting reimbursement for the health club membership as well as other expenses not at issue in this appeal.

At a hearing before a compensation judge, both parties agreed that Asti had "attained maximum medical improvement no later than October 7, 1996." Further, respondents did not dispute that Asti needed to perform an exercise program to maintain his low back in sufficient health to remain employed as a flight attendant. However, respondents asserted that all necessary exercises could be performed at home. Acknowledging the differing views regarding the necessity of the health club membership, the compensation judge found that Asti would not be able to continue his employment as a flight attendant absent continuation of his prescribed exercise routine. Accordingly, the compensation judge found "[t]hat the exercise program [Asti] is currently enrolled in is reasonable an[d] necessary."

Although the health club membership extended beyond the 13-week limitation of Minn. R. 5221.6600, subp. 2B(3), the compensation judge found that the departure from the limitation was in accordance with Minn. R. 5221.6050, subp. 8C, which allows additional treatment when necessary to assist in the "employee's initial return to work." The compensation judge thus ordered respondents to reimburse Asti for membership fees beginning in January 1997 and continuing "until such time as the employee is able to continue working as a flight attendant without such treatment."

On appeal, the WCCA concluded that the compensation judge properly found the health club membership to be reasonable and necessary. However, the WCCA concluded that the compensation judge erred in ordering the respondents to pay for the membership indefinitely when the claim related only to the 1997 membership prescribed by Asti's

neurologist, and modified the compensation judge's order accordingly. With regard to whether the departure was justified, the WCCA stayed resolution pending this court's decision in *Jacka*, 580 N.W.2d 27. Following the release of the *Jacka* decision, the WCCA concluded that the compensation judge clearly erred in finding that Asti met the departure guidelines of Minn. R. 5221.6050, subp. 8C. The WCCA first determined that Asti failed to show any progression in activities as required under the treatment parameter rules for additional time periods of health club memberships. *See* Minn. R. 5221.6600, subp. 2B(3). The WCCA further determined that the 1997 health club membership began nearly 6 months after Asti's initial return to work, and thus did not assist Asti in that initial return. The WCCA therefore concluded that Asti failed to meet the departure guidelines that allow departure where the treatment is "necessary to assist the employee in the initial return to work." Minn. R. 5221.6050, subp. 8C. In so concluding, the WCCA stated:

> [T]here is *no* evidence in this record that would support the conclusion that a health club membership beginning in January of 1997, more than six months after the employee's unrestricted return to his job, could qualify as assisting the employee in his *initial* return to work. Therefore, we are compelled to conclude that the compensation judge's application of Minn. R. 5221.6050, subp. 8C, is clearly erroneous and unsupported by substantial evidence in the record as a whole. * * * [D]espite the substantial evidence indicating that a health club membership is a reasonable, cost-effective treatment for the employee's significant impairment, the record will not support a finding that the health club membership is compensable under the permanent treatment parameters.

The WCCA also stated that it found "no evidence in this record that would allow a reasonable fact finder to conclude that this is one of those 'rare cases' specified in *Jacka*" that would allow a departure from the treatment parameter rules.

Asti appeals the WCCA's reversal of the compensation judge's order, arguing that the

health club membership satisfies the departure requirements of Minn. R. 5221.6050, subp. 8C. In the alternative, Asti argues that his case presents "one of those rare cases" referred to in *Jacka* that would justify a departure from the treatment parameter rules.

The Department of Labor and Industry promulgated treatment parameter rules to "guide compensation judges in the determination of proper benefits." *Jacka*, 580 N.W.2d at 32. Two of these rules are at issue in the instant case. First, Minn. R. 5221.6600, subp. 2B(3), provides for health club memberships as "chronic management modalities" in the treatment of back injuries. Such memberships are subject to a 13–week treatment period, with an allowance for additional treatment where "there is documentation of attendance and progression in activities." *Id.* Second, Minn. R. 5221.6050, subp. 8C states that departure from the 13–week treatment period is appropriate "[w]here treatment is necessary to assist the employee in the initial return to work where the employee's work activities place stress on the part of the body affected by the work injury."

■ Asti urges us to hold that the trial court did not err in finding that the health club membership was necessary in assisting him in his initial return to work. The compensation judge so found, yet the WCCA reversed that finding as clearly erroneous. We agree with the WCCA's holding that "there is no evidence whatsoever of any 'progression in activities,'" and thus no additional period of treatment is indicated under Minn. R. 5221.6600, subp. 2B(3). We also agree with the WCCA's affirmance of the compensation judge's conclusion that the health club membership is reasonable and necessary under case law principles. The compensation judge found that the exercise program allowed Asti to maintain his back in sufficiently strong condition to carry out the duties of a flight attendant on a regular basis. Although we agree with the WCCA's conclusion that Asti failed to meet the specific requirements of departure under Minn. R. 5221.6050, subp. 8C, under these facts our inquiry does not end there. Since 1987, Asti's treatment had been continuous and clearly assisted Asti not only in his return to work in July 1996 following his most recent compensable injury, but also in allowing Asti to remain gainfully employed.

In *Jacka,* we held that the treatment parameter rules were valid guidelines that should be followed by compensation judges. 580 N.W.2d at 35. However, in holding that the treatment parameter rules were valid, we cited with approval the provisions of Minn. R. 5221.6050, subp. 8, stating that "the rules allow the judge to depart from the parameters when appropriate." *Jacka,* 580 N.W.2d at 33. It was this type of "variability and flexibility" that made the treatment parameter rules a valid guide, rather than an invalid imposition on the discretion of compensation judges. *Id.* at 35. Yet we recognized that the rules were not infallible, and could not "anticipate every exceptional circumstance." *Id.* We thus "acknowledge[d] that a compensation judge may depart from the rules *in those rare cases* in which departure is necessary to obtain proper treatment." *Id.* at 35–36 (emphasis added).

■ Asti urges us to hold that this is one of "those rare cases" where his proper medical treatment requires a departure from the treatment parameter rules. The compensation judge found that Asti's prescribed exercise program was necessary "to cure and relieve the effects of the three * * * low back injuries and to allow [Asti] to carry on his duties as a flight attendant." Thus, the compensation judge unequivocally stated that absent his regular participation in the prescribed program, Asti would be unable to continue his employment as a flight attendant.

It cannot be legitimately asserted that the drafters of the treatment parameter rules considered every possible scenario, yet determined that the wiser choice was to require the employee's health to decline to the point of inability to work rather than to continue an inexpensive treatment that allows continued employment. We thus conclude that this is indeed one of those rare cases where a departure from the treatment parameter rules is necessary, and reverse the holding of the WCCA.

We do, however, agree with the WCCA in that an order for reimbursement should not be applicable "until such time as the employee is able to continue working as a flight attendant without such treatment." Asti's prescription was only for a 1–year health club membership, subject to continuation based on the continuing necessity of the membership to maintaining employment and evidenced by continued attendance. The compensation judge's order for reimbursement should not extend beyond that time.

Reversed and reinstated as modified.

The employee is awarded $400 in attorney's fees.